GEORGE W. PLATNER, Appellant, v. J. F. HUGHES et al.,
Appellees.

**CORPORATIONS:    Liability for Corporate Debts—Procedure Against
1   Officers and Directors.**    The personal and individual liability im-
    posed by statute (Sec. 8380, Code of 1924) on the corporate direc-
    tors and officers for corporate debts to which they have knowingly
    consented, and which are in excess of the indebtedness permitted
    by law, is a liability which is enforcible, not by action *at law* by each
    creditor in piecemeal, and against one or more or all offending officers
    and directors, but by an action *in equity* for and on behalf of all
    creditors, wherein may be adjudicated, once for all, the extent of
    liability of each defendant and the extent of right of each creditor.

**TRIAL:    Transfer to Equity—Nonapplicability of Statute.**    The statu-
2   tory provision`for a transfer of a cause from law to equity is not
    applicable to a cause distinctly brought and tried at law,—a cause
    wherein plaintiff neither pleads nor proves an equitable cause of ·
    action.    (Sec. 10944, Code of 1924.)

**APPEAL AND ERROR:    Modification—Judgment—Avoidance of Bar.**
· 3   A judgment which is essentially in abatement, but which on its face

purports to be in bar, will be so modified on appeal as to show that it is in abatement. (See Book of Anno., Vol. 1, Sec. 11569; Sec. 12871, Anno. 105.)

Headnote 1:  14a C. J. pp. 221, 228.  Headnote 2:  38 Cyc. p. 1292.
Headnote 3: 4 C. J. p. 1153.

*Appeal from Pottawattamie District Court.*—THOMAS C. WHITMORE, Judge.

DECEMBER 15, 1925.

ACTION at law, brought by the plaintiff as a creditor of a corporation, against the defendants, as officers and directors of such corporation, to recover the amount of the corporate indebtedness from such defendants, under the provisions of Section 1622 of the Code of 1897, and Section 8380 of the Code of 1924, on the ground that said defendants had knowingly consented to an indebtedness of the corporation in excess of the legal limit. The defense was a general denial, and a somewhat specific denial of the right of the plaintiff to maintain an action at law in his own behalf. At the close of the evidence, the trial court directed a verdict for the defendants, which, in effect, dismissed the plaintiff's case. The plaintiff has appealed.—*Modified and affirmed.*

*Kimball, Peterson, Smith & Peterson,* for appellant.

*George Wright* and *A. G. Kistle,* for appellees.

EVANS, J.—I.  It is made to appear that the plaintiff was a creditor of the Standard Manufacturing Company, an alleged corporation, to the amount of more than $23,000. After such indebtedness was incurred, such corporation was adjudged bankrupt. Its assets, totaling about $51,000, were applied as a dividend upon its indebtedness, amounting to about $225,000.

1. CORPORATIONS: liability for corporate debts: procedure against officers and directors.

Plaintiff alleged that the corporation was organized upon a paid-up capital of $20,000, and no more; that the defendants were its directors and general managing officers; and that they knowingly incurred the indebtedness in excess of the limits per-

mitted by statute. The statute upon which the suit is predi-
cated provides:

"If the indebtedness of any corporation shall exceed the
amount of indebtedness permitted by law, the directors and
officers of such corporation *knowingly consenting thereto shall
be personally and individually liable to the creditors of such
corporation for such excess.*" Section 1622, Code of 1897 (Sec-
tion 8380, Code of 1924).

The principal question presented to us is one of construc-
tion of the foregoing statute. The contention of the plaintiff is
that such statute subjects the consenting director to an action
at law by every creditor to the extent of the excess of indebted-
ness over the legal limit. The contrary contention by the de-
fendants is that the liability thus created is one in favor of the
creditors collectively, and that the enforcement of such liability
creates a trust fund in which all creditors become potential
beneficiaries; that such liability can be adjudged and enforced
only in equity, and in a proceeding wherein all creditors have
an opportunity to be heard. The argument for the plaintiff is
that he has no interest or concern in the claims of other credi-
tors; that his claim will be neither greater nor less on account
thereof; that his rights are fixed by the express terms of the
statute; and that the enforcement of such rights works no preju-
dice to any other creditor. This argument has in it much plausi-
bility. It appears, however, that statutes virtually identical
with ours are, and have been, in force for many years in many
states of the Union, and that these statutes have been quite uni-
formly construed in accordance with the contention of the de-
fendants. The Federal statute, substantially identical, has been
so construed by the United States Supreme Court. Such, also,
has been the holding in Illinois, in New York, in Massachusetts,
in Tennessee, in Vermont, and in California. No case is cited
to us, holding to the contrary, unless it be that of *Patterson v.
Stewart*, 41 Minn. 84, wherein the case under consideration is
distinguished in its facts from the holdings of other courts to
which we here refer. In the following division hereof, we shall
set forth a few excerpts from the opinions of other courts which
will sufficiently indicate the ground upon which the holding is
made. Sufficient here to say that the cases are predicated on

the theory that the underlying purpose of the statute is to provide a remedy which shall be applied alike to all creditors who come within its provisions; that the enforcement of the liability created by the statute presumptively involves an accounting both as to the extent of relief to which each creditor is entitled and to the extent of liability to which each managing officer or director is subject; that it involves also a question of equitable distribution of the sums which may be realized by the enforcement of the statute; that one creditor should not be permitted to absorb the solvency of those who are thus subject to liability; that such a course would presumptively result in a race of creditors which would operate to the detriment of the great body of creditors and to the detriment of their debtors as well; in short, that this statute is not intended as a prize in a race of creditors, and its remedy is not to the swift, to the exclusion of another having equal equity; but that the statutory liability thus created is deemed a constructive asset of the bankrupt corporation. As such, it becomes available for distribution, subject to any particular equity which may prevail in favor of any particular creditor. It might be an interesting query whether this remedy could have been pursued by the trustee in bankruptcy.

II. This division will be devoted to the quotation of excerpts from the opinions of other courts on this subject.

In *Hornor v. Henning*, 93 U. S. 228, the United States Supreme Court construed the following Federal statute:

"If the indebtedness of any company organized under this act shall at any time exceed the amount of its capital stock; the trustees of such company assenting thereto *shall be personally and individually liable for such excess to the creditors of the company.*"

The holding in that case is indicated by the following syllabus thereof:

"1. That an action at law cannot be sustained by one creditor among many for the liability thus created, or for any part of it, but that the remedy is in equity.

"2. That this excess constitutes a fund for the benefit of *all* the creditors, so far as the condition of the company renders a resort to it necessary for the payment of its debts."

In *Stone v. Chisolm,* 113 U. S. 302, the same court said:

"To ascertain the existence of the liability in a given case requires an account to be taken of the amount of the corporate indebtedness, and of the amount of the capital stock actually paid in; facts which the directors, upon whom the liability is imposed, have a right to have determined, once for all, in a proceeding which shall conclude all who have an adverse interest, and a right to participate in the benefit to result from enforcing the liability. Otherwise the facts which constitute the basis of liability might be determined differently by juries in several actions, by which some creditors might obtain satisfaction and others be defeated. The evident intention of the provision is that the liability shall be for the common benefit of all entitled to enforce it, according to their interest, an apportionment which, in case there cannot be satisfaction for all, can only be made in a single proceeding, to which all interested can be made parties. The case cannot be distinguished from that of *Hornor v. Henning,* 93 U. S. 228, the reasoning and result in which we reaffirm. It is immaterial that in the present case it does not appear that there are other creditors than the plaintiffs in error. There can be but one rule for construing the section, whether the creditors be one or many. To the question certified, therefore, it must be answered that an action at law will not lie, and that the only remedy is by a suit in equity."

Construing an identical statute in the state of Illinois in *Low v. Buchanan,* 94 Ill. 76, the Supreme Court of that state said:

"The right of appellant to recover in the action instituted by him is based upon the hypothesis that, where a corporation subject to the provisions of this section incurs an indebtedness in excess of the amount of its capital stock, the individual creditor acquires a right of action for such excess against so many of the directors or officers of the company as assented thereto, and that this right of action may be enforced in a court of law. We are unable to concur in this view of the matter. Such a construction would, manifestly, lead in most cases to great difficulties and hardships. In all cases where the corporation is insolvent, to allow the individual creditor to collect the whole amount of his claim against the corporation from a solvent of-

ficer of the company, to the exclusion of other creditors whose claims are equally meritorious, would certainly be the grossest inequality, and manifestly unjust. * * * After a careful consideration of the matter, we have reached the conclusion that directors and officers of stock corporations who incur liabilities under the section in question, become bound and answerable, not to some particular creditor, but, in the language of the act, to the 'creditors,' that is, all the creditors. This construction puts all the creditors upon a perfect equality, and is in conformity with the express words of the act. It was doubtless the object and purpose of the legislature that all claims arising under the provisions of the section in question should be regarded in the nature of a trust fund, to be collected and divided pro rata among all the creditors. And if we are correct in this conclusion, it is quite manifest that this distribution of the fund could only be made in a court of equity. But the conclusion we have reached does not rest solely upon the reasons here stated, and many others equally cogent that might be mentioned. In *Hornor v. Henning,* 93 U. S. 228, the Supreme Court of the United States gave a similar construction to an act of Congress, which, so far as it bears upon the question under consideration, is almost identical with the sixteenth section of our own statute. The act of Congress of May the 5th, 1870, being the same just referred to, authorized the formation of stock corporations within the District of Columbia, and contained, among other things, this provision: 'If the indebtedness of any company organized under this act shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of the company.' The court, in construing this provision, held, in the case just referred to, that an action at law founded thereon would not lie, and Mr. Justice Miller, in delivering the judgment of the court, among other things said: 'The remedy for this violation of duty as trustee is in its nature appropriate to a court of chancery. The powers and instrumentalities of that court enable it to ascertain the excess of the indebtedness over the capital stock, the amount of this which each trustee may have assented to, and the extent to which the funds of the incorporation may be resorted to for the payment of the debts;

also, the number and names of the creditors, the amount of their several debts, to determine the sum to be recovered of the trustees and apportioned among the creditors in a manner which the trial by jury and rigid rules of common-law proceedings render impossible.' All that is said here applies with equal force to our own statute and the case at bar. It is urged by appellant, however, by way of answer to the insurmountable difficulties that would necessarily arise in every action at law founded upon the statute, where there are more creditors than one, that in the case before the court there is no evidence that there were other creditors of the company at the time appellant commenced his suit. * * * Without expressing any opinion whatever as to whether an action at law would lie, under the circumstances, * * * the plaintiff would be bound to set forth by proper averments in his declaration, and prove on the trial, the special circumstances warranting such an action. That was not done in this case, and hence the question raised by the supposed case is not before us.''

To the same effect as the foregoing are the following: *Woolverton v. Taylor,* 132 Ill. 197; *Gay v. Kohlsaat,* 223 Ill. 260 (79 N. E. 77); *National Bank v. Dillingham,* 147 N. Y. 603 (42 N. E. 338); *Westinghouse E. & M. Co. v. Reed,* 194 Mass. 590 (80 N. E. 621); *Gardiner v. Bank of Napa,* 160 Cal. 577 (117 Pac. 667); *Brown & Co. v. Ware,* 87 Vt. 121 (88 Atl. 507).

III. The question here presented has not heretofore had our consideration. In view of the substantial unanimity of the higher courts of other jurisdictions in the construction of like statutes, we cannot do otherwise than to recognize such construction as established by the great weight of authority. It is highly desirable that legislation on such a subject should be uniform, if practicable. But it will avail nothing for the statutes to be uniform, if the respective courts disagree in their construction. The reasoning underlying these holdings is very persuasive, and the operation of the statute as so construed is equitable. We are disposed, therefore, to follow these authorities and to put a like construction upon our own statute. The operation of the statute under such a construction cannot work injustice to any creditor. Such construction simply eliminates the advantage of preference otherwise obtainable by a swift creditor. Such a con-

struction also operates more justly upon the defendant-directors. A particular director may be liable for much or for little, or for nothing at all. But upon the construction contended for by plaintiff, such a director may be subjected to successive actions at law by a hundred creditors, and thereby be required to adjudicate his nonliability or the limit of his liability in each case. The doctrine of the cited authorities is that there should be *one* adjudication, and not *one hundred,* which should adjudicate once and for all the extent of liability of each defendant-director, and the extent of right of each plaintiff to the fund thus assembled. Thereby a vexatious multiplicity of suits is avoided. This is always an appealing objective.

We hold, therefore, that an action at law by one creditor, to recover the excess amount due him from the bankrupt corporation, will not lie, under this statute.

IV. It is urged by the appellant that, even though the action should have been brought in equity, rather than at law, the only remedy of the defendants was by motion to transfer; that they failed to present such a motion; that, if the appellant was on the wrong side of the court, this would only justify the court in transferring the case to the equity side, and would not justify a dismissal of the case. If the appellant, as plaintiff, had pleaded a case in equity, and by his evidence had sustained the same, and had thereby shown himself entitled to the equitable relief, his contention would be to the point. He neither pleaded nor proved an equity case. It would have been a vain thing, therefore, for the court to transfer his case to the equity side. For want of pleading and evidence, the dismissal was as inevitable there as on the law side. The case does not turn upon a mere question of practice, but upon the nature of the cause of action created by the statute in question, and upon the extent and nature of the right conferred thereby upon a single creditor.

*2. TRIAL: transfer to equity: nonapplicability of statute.*

We think, therefore, that the statutory provision for a transfer of a case from the law side to the equity side is not applicable here.

V. The judgment dismissing the case was essentially an abatement. It does not, however, purport to be such, upon the face of the record. Under the statute, it would thereby be pre-

sumed to be a judgment in bar.   This might
operate as a future bar against all future rem-
edy to the plaintiff.  To this extent we think the
judgment was erroneous, in that it ought to

3. APPEAL AND
   ERROR: modifica-
   tion: judgment:
   avoidance of
   bar.

have purported to be in abatement, rather than in bar.  To this
extent the judgment will be modified, and will be declared as a
judgment in abatement, and as such, affirmed.

Because of this modification, costs will be apportioned.
Costs of printing the abstracts will be equally divided.  No costs
will be taxed for printing briefs.

The judgment below is, accordingly, modified and affirmed.
—*Modified and affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.