PRESTON ROYER *et al., Respondents,* v. H. T. MAIB *et al., Appellants.*[1]

*Stephen E. Chaffee,* for appellants.

*D. V. Morthland* and *Lane Morthland,* for respondents.

MAIN, J.—In the complaint in this action, there were three causes of action, separately stated, in each of which the plaintiffs sought a money judgment. The plaintiffs were Preston Royer and his wife, and the defendants were H. T. Maib and his wife and Milford H. Maib and his wife.

The cause was tried to the court, and resulted in findings of fact from which it was concluded that the

[1]Reported in 107 P. (2d) 335; 111 P. (2d) 593.

plaintiffs were not entitled to recover upon the first cause of action, but were entitled to recover upon the second and third. Judgment was entered upon the second cause of action in favor of the plaintiffs in the sum of thirty-five hundred dollars, together with interest and an attorney's fee there fixed. On the third cause of action, the plaintiffs were given a judgment for $1,224.43, together with interest. The first cause of action was dismissed. From the judgment entered upon the second and third causes of action, the defendants, H. T. Maib and wife and Milford H. Maib, appealed, no judgment having been entered against Mrs. Milford H. Maib because she and her husband were not married at the time the transactions here involved took place.

The facts will only be stated in so far as it is necessary to present the question which we deem controlling upon this appeal. Milford H. Maib had been engaged in the retail merchandising of radios, refrigerators, washing machines, and electrical appliances at Sunnyside, in Yakima county, under the name of "Maib's." He caused a corporation to be formed, which was named "Maib's Incorporated." The articles of incorporation were filed in the secretary of state's office, and on March 24, 1936, a certificate of incorporation was issued. The number of shares of the capital stock of the company was five hundred, of the par value of ten dollars per share. The directors named in the articles to serve until the first Monday in June, 1936, were Milford H. Maib, H. H. McNair, and H. T. Maib. Subsequently, they were elected by the stockholders as directors.

An affidavit was filed by Milford H. Maib and H. H. McNair, to the effect that the amount of the paid-in capital stock stated in the articles of incorporation, to-wit, the sum of five thousand dollars, had been fully

paid. March 23, 1936, Milford H. Maib, by bill of sale, transferred the property which was in his place of business at Sunnyside, to Maib's Incorporated, and the business was thereafter conducted under that name. Subsequently, and early in the year 1937, a receiver was appointed by the superior court of Yakima county for the corporation. The trial court found that the affidavit, above referred to,

". . . was false and fraudulent in that the capital of said corporation was not paid for in the manner provided by the statute and in the manner set forth in said affidavit and that said corporation from its inception was wholly insolvent."

Section 8 of chapter 185 of the Laws of 1933, p. 777, provides that a corporation formed under that act

". . . shall not incur any debts or begin the transaction of any business, except such as is incidental to its organization or to the obtaining of subscriptions to or the payment for its shares, until: . . .
"b. the amount of paid-in capital with which it will begin business, as stated in the articles of incorporation, has been fully paid; and
"(c) there has been filed in the office of the auditor of the county in which the corporation has its registered office an affidavit signed by at least a majority of the board of directors stating that the amount of paid-in capital with which it will commence business, as stated in the articles of incorporation, has been fully paid."

In the second subdivision of this section, it is provided that:

"If a corporation has transacted any business in violation of this section, the officers who participated therein and the directors, except those who dissented therefrom and caused their dissent to be filed at the time in the registered office of the corporation, or who, being absent, so filed their dissent upon learning of the action, shall be severally liable for the debts or liabilities of the corporation arising therefrom."

It will be noted that the language of the statute, just quoted, provided that the officers and directors who do the things therein stated "shall be severally liable for the debts or liabilities of the corporation arising therefrom." It will further be noted that this section does not make such officers or directors liable for all the debts of the corporation, but only those arising from their dereliction. This being true, the statute creates a limited liability, and does not make the officers and directors liable for all the debts, but only, as stated, those which arise on account of their fault.

█ We now come to the question of whether, for the liability provided in this statute, an action at law can be maintained by one creditor against one of the directors who has been at fault.

In *Hornor v. Henning,* 93 U. S. 228, 23 L. Ed. 879, the court had before it an act of Congress under which certain corporations could be organized in the District of Columbia, and which contained a provision that,

" 'If the indebtedness of any company organized under this act shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of the company.' "

It will be noted that here was a limited liability provided for, in that the persons personally and individually liable were only liable for the excess which was caused by the failure to comply with the act. It was there held that an action at law could not be maintained by one creditor, among many, for the liability thus created or for any part of it, but that the remedy was in equity. In the course of the opinion, it was there said:

"We are of opinion that the fair and reasonable construction of the act is, that the trustees who assent to an increase of the indebtedness of the corporation be-

yond its capital stock are to be held guilty of a violation of their trust; that Congress intended, that, so far as this excess of indebtedness over capital stock was necessary, they should make good the debts of the creditors who had been the sufferers by their breach of trust; that this liability constitutes a fund for the benefit of all the creditors who are entitled to share in it, in proportion to the amount of their debts, so far as may be necessary to pay these debts.

"The remedy for this violation of duty as trustees is in its nature appropriate to a court of chancery. The powers and instrumentalities of that court enable it to ascertain the excess of the indebtedness over the capital stock, the amount of this which each trustee may have assented to, and the extent to which the funds of the corporation may be resorted to for the payment of the debts; also, the number and names of the creditors, the amount of their several debts, to determine the sum to be recovered of the trustees, and apportioned among the creditors,—in a manner which the trial by jury and the rigid rules of common-law proceedings render impossible.

"This course avoids the injustice of many suits against defendants for the same liability, and the greater injustice of permitting one creditor to absorb all, or a very unequal portion, of the sum for which the trustees are liable; and it adjusts the rights of all concerned on the equitable principles which lie at the foundation of the statute."

In the case of *Platner v. Hughes*, 200 Iowa 1363, 206 N. W. 268, 43 A. L. R. 1141, the court had before it a statute of that state which provided that,

" 'If the indebtedness of any corporation shall exceed the amount of indebtedness permitted by law, the directors and officers of such corporation *knowingly consenting thereto shall be personally and individually liable to the creditors of such corporation for such excess,*' "

and it was there held that an action at law by one of several creditors of the insolvent corporation would

not lie to recover the excess amount claimed to be due him under the statute. In the course of the opinion in that case, it was said, after referring to a number of cases:

"The reasoning underlying these holdings is very persuasive, and the operation of the statute as so construed is equitable. We are disposed, therefore, to follow these authorities and to put a like construction upon our own statute. The operation of the statute under such a construction cannot work injustice to any creditor. Such construction simply eliminates the advantage of preference otherwise obtainable by a swift creditor. Such a construction also operates more justly upon the defendant-directors. A particular director may be liable for much or for little, or for nothing at all. But upon the construction contended for by plaintiff, such a director may be subjected to successive actions at law by a hundred creditors, and thereby required to adjudicate his nonliability or the limit of his liability in each case. The doctrine of the cited authorities is that there should be *one* adjudication and not *one hundred,* which should adjudicate once and for all the extent of liability of each defendant-director, and the extent of right of each plaintiff to the fund thus assembled. Thereby a vexatious multiplicity of suits is avoided."

The cases of *Low v. Buchanan,* 94 Ill. 76, and *Webb v. Cash,* 35 Wyo. 398, 250 Pac. 1, and others that might be assembled, are to the same effect.

In an annotation following the case of *Platner v. Hughes, supra,* it is said:

"In many jurisdictions it is provided by statute that if the officers and directors of a corporation permit the corporate indebtedness to exceed the limit fixed by the charter they shall be individually liable to the creditors to the extent of the excess over the legally authorized liability. The great weight of authority is to the effect that the liability thus created is for the benefit of all the creditors, or at least of all whose claims go to make up the excess, and that it cannot be enforced

by a single creditor suing on his claim, but only in a suit on behalf of all the creditors entitled to participate." 43 A. L. R. 1147.

This note does not appear to make any distinction between statutes which create a limited, and those which create a general, liability. As to what the holding of this court would be if the statute of this state created a general, and not a limited, liability, we express no opinion.

All the cases above cited are based either upon state statutes or an act of Congress which created a limited, and not a general, liability on the part of the directors or officers of the corporation for failing to comply therewith.

The action to enforce this liability is equitable in character, in which all directors and creditors must be made parties, either plaintiffs or defendants, for the purpose of determining once and for all their rights and liabilities, and the receiver of a corporation is a proper party in order that the decree might make proper provision as to the application of the corporation's assets.

In *Preston v. Howell,* 219 Iowa 230, 257 N. W. 415, 97 A. L. R. 1140, it was said:

"Under the law as announced in *Platner v. Hughes,* 200 Iowa 1363, 206 N. W. 268, 43 A. L. R. 1141, this kind of an action is of an equitable character, in which all directors and creditors must be made parties, for the purpose of determining once and for all their rights and liabilities."

In 2 Thompson on Corporations (2d ed.), 398, § 1371:

"The courts which enforce the equity procedure necessarily require either that all creditors be joined, or that the action be prosecuted in the name of one for the benefit of all. . . . In a New York case to enforce a liability on account of excessive indebtedness, it was held proper to make the temporary receiver of

the corporation a party defendant in order that the decree might make proper provision as to the application of the corporation's assets."

In the case of *Parsons v. Rinard Grain Co.,* 186 Iowa 1017, 173 N. W. 276, it was pointed out that the liability created by a statute, such as we are here considering, is contractual in its nature, and not penal.

In 3 Fletcher, Cyclopedia Corporations (Perm. ed.), 705, § 1235, it is said:

"The statute is contractual and the liability 'is secondary to that of the corporation, and is for the benefit of all the creditors entitled to share in the fund to be derived therefrom, in proportion to the amount of their debts, entering into the excess, so far as may be necessary to pay the same.' "

The appellants rely upon a number of decisions, an examination of which discloses that, with two or three exceptions, such as in *In re Beachy & Co.,* 170 Fed. 825, which is a district court decision, and *Nuckels v. Robinson-Pettett Co.,* 159 Ky. 214, 166 S. W. 972, they are all based upon statutes which create a general, and not a limited, liability. In neither of those cases just cited was there any mention made as to whether the statutes involved created a limited, or a general, liability.

The case of *Patterson v. Stewart,* 41 Minn. 84, 16 Am. St. 671, 4 L. R. A. 745, was based upon a statute which provides that,

" 'If any corporation organized and established under the authority of this act shall violate any of its provisions, and shall thereby become insolvent, the directors ordering or assenting to such violation shall be jointly and severally liable in an action founded on this statute for all debts contracted after such violation as aforesaid.' "

It will be noted that, under that statute, the directors were made liable "for all debts contracted" after such

violation. There, the liability is general, and not limited.

Cases based upon statutes which create a general liability do not meet the question presented under the statute of this state, which, as we have found, creates a limited, and not a general, liability.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the action without prejudice.

BLAKE, C. J., ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

### ON REHEARING.

[*En Banc.* March 21, 1941.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the Departmental opinion heretofore filed herein.

[No. 27871. Department One. November 27, 1940.]