[No. 28931. Department One. March 12, 1943.]

H. T. MAIB et al., *Appellants*, v. MARYLAND CASUALTY COMPANY et al., *Respondents and Cross-appellants.*[1]

*Stephen E. Chaffee*, for appellants.

*D. V. Morthland* and *George O. Beardsley*, for respondents and cross-appellants.

MILLARD, J.—Preston Royer commenced an action December 1, 1937, against H. T. Maib and wife and

[1]Reported in 135 P. (2d) 71.

also against their son, Milford H. Maib, under provision of Laws of 1933, chapter 185, § 8, p. 777 (Rem. Rev. Stat. (Sup.), § 3803-8 [P. C. § 4592-38]), that the officers of a corporation who participate in the transaction of business by that corporation without the amount of its paid-in capital having been fully paid shall be severally liable for the debts of the corporation arising therefrom. In that action, the plaintiff filed an affidavit for garnishment of the Grandview branch of the Old National Bank and Union Trust Company, obtained an order fixing the amount of the bond at five thousand dollars, and filed a garnishment bond with the Maryland Casualty Company, as surety for that amount.

The writ of garnishment was served December 2, 1937, on garnishee defendant bank, which answered that it had in its possession, as escrow holder under a certain voting trust agreement dated September 28, 1936, eighty thousand shares of the stock of Pierce Metals Development Company issued to and owned by H. T. Maib. Judgment was entered November 18, 1939, in favor of Royer against the defendants in that action, together with attorney's fees of three hundred fifty dollars and interest and costs. Judgment was also entered against the garnishee defendant, which provided that special execution issue directing the sheriff to seize the shares of stock subject to the trust agreement and to sell same to the highest bidder for cash.

The Maibs, defendants in that action, appealed and filed a cost, but not a supersedeas, bond. January 16, 1940, while the appeal was pending, Royer, the judgment creditor, caused a writ of special execution to be issued by virtue of which the sheriff for Yakima county seized the shares of stock and sold same January 29,

1940, to Royer, who was the highest bidder, for eight hundred dollars.

In *Royer v. Maib*, 6 Wn. (2d) 286, 107 P. (2d) 335, 111 P. (2d) 593, we held that the statute under which Royer instituted his action against the Maibs does not make the officers and directors liable for all the debts of the corporation, but only those arising from their dereliction; that is, the statute creates a limited liability and does not make the officers and directors liable for all the debts, but only for those which arise on account of their fault. We stated that an action at law could not be maintained by one creditor against one of the directors who had been at fault; that

"The action to enforce this liability is equitable in character, in which all directors and creditors must be made parties, either plaintiffs or defendants, for the purpose of determining once and for all their rights and liabilities, and the receiver of a corporation is a proper party in order that the decree might make proper provision as to the application of the corporation's assets."

We reversed the judgment and remanded the cause "with direction to the superior court to dismiss the action without prejudice." Pursuant to our mandate, judgment was entered by the superior court March 29, 1942, dismissing the action.

Thereafter, H. T. Maib and wife instituted this action against the Maryland Casualty Company to recover on the garnishment bond for damages sustained by them on account of the wrongful issuance of the writ and the impounding of the shares of capital stock of the Pierce Metals Development Company. The surety company answered by general denial, but did not allege any facts as an affirmative defense in mitigation of damages. Preston Royer filed a complaint in intervention, which was a general denial of plaintiffs' allegations, and alleged that the shares of stock had no

value, but alleged no facts in mitigation of damages. Trial of the cause to the court resulted in findings of fact which are summarized as follows:

The writ of garnishment impounding the shares of stock described above was wrongfully issued. The sale of those shares of stock to Royer was void. The fair market value of the stock at the time it was impounded was four thousand dollars. Prior to the dismissal of the writ of garnishment, the Pierce Metals Development Company was adjudged bankrupt and, at the time of dismissal of the writ of garnishment, the shares of stock had no value. Plaintiffs could have sold the shares of stock after issuance of the writ of garnishment and could thereby have minimized the damages claimed by them in this action. It was the duty of plaintiffs to minimize damages, which they could have done by filing a release of garnishment bond which would have permitted them to sell the shares of stock then under garnishment and deposit the proceeds in court to await the result of the suit. Plaintiffs were entitled to nominal damages in the amount of five hundred dollars, and were also entitled to allowance of a reasonable attorney's fee for a part of their damages and for obtaining the release and dissolution of the garnishment.

The court was of the opinion that one thousand dollars was a reasonable fee for the entire services rendered by counsel for plaintiffs, but that the fee should be apportioned between the main action and the action in which release of the garnishment was obtained. The court awarded three hundred fifty dollars as a reasonable allowance to counsel for his services in obtaining a dissolution of the garnishment. Judgment was entered accordingly. Plaintiffs appealed. Defendant casualty company and intervener Royer cross-appealed from that part of the judgment that the writ of garnishment was wrongfully issued and from the award

to the plaintiffs of five hundred dollars as nominal damages.

Counsel for respondents and cross-appellants contend that there is a failure of proof that the garnishment was wrongfully issued. It is argued that, as in *Royer v. Maib*, 6 Wn. (2d) 286, 107 P. (2d) 335, 111 P. (2d) 593, the action was dismissed *without prejudice*, there is no adjudication that the Maibs were not indebted to Royer.

■ The question whether a plaintiff has a right to recover without showing lack of probable cause for the suing out of a writ of garnishment is foreclosed by our opinion in *Olsen v. National Grocery Co.*, 15 Wn. (2d) 164, 130 P. (2d) 78, which was filed two months subsequent to the judgment in the case at bar; hence, the trial court was not afforded the benefit of that holding. We held in the case cited that, within the meaning of the garnishment statute (Rem. Rev. Stat., § 681 [P. C. § 8000]), it was not necessary in the action to recover damages for wrongfully suing out the writ of garnishment to show lack of probable cause, as there is no provision in the statute that liability shall depend on lack of probable cause.

■ It does not follow, because *Royer v. Maib*, *supra*, was dismissed "without prejudice" to the right to recover against officers or directors of the corporation involved for debts of the corporation arising from their dereliction, that the issuance of the writ of garnishment was not wrongful when thereby appellants' shares of stock were attached to satisfy an alleged liability for which appellants could only be severally liable and only liable for debts arising on account of their fault. While Royer's mistake was a procedural error and he was not foreclosed from instituting a proper action after his cause was dismissed without prejudice because of that error, the suing out by him

of the writ of garnishment attaching appellants' shares of stock was none the less wrongful. Whether the action was dismissed with prejudice after trial upon the merits or whether it was dismissed without prejudice because of procedural error, appellants were entitled to dissolution of the writ.

A dismissal "with prejudice" is equivalent to an adjudication upon the merits and will operate as a bar to a future action. In *Royer v. Maib, supra,* the dismissal "without prejudice" meant no more than that the existing rights of the parties, whatever they might be, were not affected by the dismissal; those rights were as open to settlement by negotiations or legal controversy as if judgment of dismissal had not been entered. Mistakenly commencing an action at law (which could not be maintained by one creditor against one of the directors of a corporation under Laws of 1933, chapter 185, § 8, since the action to enforce the liability of the officers and directors for debts of the corporation is equitable in character in which all directors and creditors must be made parties to determine once and for all their rights and liabilities) and in aid thereof obtaining issuance of a writ of garnishment by virtue of which appellants were deprived of possession of their property, constituted a wrongful suing out of the writ of garnishment. That is, Royer obtained, without legal right, issuance of the writ of garnishment; hence, Royer wrongfully sued "out such garnishment." It follows that respondents in the case at bar may not successfully plead in exculpation of "wrongfully suing out such garnishment" the judgment of dismissal "without prejudice" whereby Royer's rights, if any, of recovery against the officers and directors of the corporation were saved. The dismissal "without prejudice" saved to Royer the right to state a new and proper cause of action if he could.

The trial court correctly decided that the garnishment of appellants' shares of mining stock was wrongful.

The shares of stock, when garnished December 2, 1937, had a market value of four thousand dollars. July 19, 1940, six months subsequent to Royer's purchase of the shares of stock at sheriff's sale, the mining company was adjudged a voluntary bankrupt and the stock became worthless. Counsel for respondents contend that the corporate stock was of fluctuating value, therefore appellants are entitled only to nominal damages, as appellants have not shown that the loss they suffered would not have been incurred but for the wrongful act of Royer. In support of that position, respondents cite 28 C. J. 543, reading as follows:

"In case of a wrongful garnishment of corporate stock of fluctuating value, it has been held that the holder cannot recover for the difference in value of the stock when garnished and at the time of trial, unless it is shown that the garnishment caused depreciation in value, or that the holder could or would have sold the stock during its detention."

Counsel for respondents argue: It was the duty of appellants to use reasonable efforts to minimize the damages sustained by Royer's wrongful garnishment of the shares of stock, which they could have done in a number of ways, as follows: By filing a release of garnishment bond with corporate surety under Rem. Rev. Stat., § 689 [P. C. § 8008]; by filing a release of garnishment bond with personal sureties in case they could not finance the surety company bond; by making application to the court for permission to sell the shares of stock and place the proceeds of the sale in the registry of the court to abide the final decision in the original cause then pending; by making an offer to Royer that the stock be sold and the proceeds placed

in escrow or in the registry of the court to abide the result of the original action.

While the action was not tried upon the theory of "fluctuating value" of the shares of stock, even upon that theory the evidence on behalf of appellants is sufficient to sustain a recovery under the fluctuating value rule as stated in 28 C. J. 543. The trial court found, which finding is supported by ample evidence, that appellants could have sold the shares of stock during the time of its detention by Royer under a wrongful garnishment. The shares of stock had a sustained value of five cents a share from December, 1936, until Royer purchased same at execution sale in 1940.

The question of mitigation of damages was not raised in this action until injected therein by the trial court in rendering judgment. Counsel for appellants invokes the general rule that, in actions for damages arising out of either tort or breach of contract, the burden is upon the party whose wrongful act caused the damages of which plaintiff complains to prove anything in diminution of the damages; or, in other words, that the damages were, or might have been, lessened by reasonable diligence on the part of the aggrieved party. See annotation in 134 A. L. R. 243.

It is not necessary to discuss the question whether the burden of pleading and proving mitigation of damages rested upon appellants or respondents. Appellants were not required to mitigate damages by filing a release of garnishment bond. *Taylor v. Wilbur,* 170 Wash. 265, 16 P. (2d) 457; *Olsen v. National Grocery Co.,* 15 Wn. (2d) 164, 130 P. (2d) 78; and *American Surety Co. v. Florida Nat. Bank,* 94 F. (2d) 126, in which *Taylor v. Wilbur, supra,* is cited with approval.

The statute (Rem. Rev. Stat., § 681) requires plaintiff, as a condition precedent to the issuance of the writ of garnishment, to file a bond conditioned that he

will prosecute his suit and pay all damages and costs that may be adjudged against him for wrongfully suing out such garnishment. The garnishment bond in *Royer v. Maib, supra,* was executed pursuant to the statute, and Royer, in that action, and the surety company, as obligors, bound themselves to pay not to exceed five thousand dollars to the obligees (appellants in the case at bar) that might be adjudged against the obligors for wrongfully suing out such writ of garnishment. The trial court was without authority to write into that bond a condition that it was appellants' duty to mitigate the damages either by filing a counter bond or applying to the court for permission to sell the shares of stock and deposit the proceeds into the registry of the court.

The trial court found—that finding is sustained by the testimony of two eminent members of the bar of Yakima county—that one thousand dollars was a reasonable attorney's fee in *Royer v. Maib, supra,* but allowed only three hundred fifty dollars as the portion for the garnishment proceedings.

We held in *Olsen v. National Grocery Co., supra,* that, where it was necessary in order to secure the release of the garnishment to try the case upon the merits, the attorney's fee incurred in the main suit was a proper element of damages. Appellants are entitled to judgment for four thousand dollars, with interest at six per centum per annum from December 2, 1937, and attorney's fees of one thousand dollars in the original action.

The judgment is reversed.

Simpson, C. J., Steinert, Jeffers, and Mallery, JJ., concur.